

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 MAY 25  PM 3: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROLAND P. JONES | CIVIL ACTION |
| VERSUS | NO. 04-1287 |
| THE LAW OFFICE OF ANTHONY G. BUZBEE,<br>P.C., ANTHONY G. BUZBEE, STERN, MILLER | SECTION: N |
| and HIGDON, and JEFFREY M. STERN, RAMSEY | MAG DIV: 3 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MOTION TO REMAND

NOW INTO COURT, through undersigned counsel, come plaintiff, Roland P. Jones, who

moves this Honorable Court to remand this matter to the Civil District Court for the Parish of

Orleans, State of Louisiana.  The reasons supporting this granting of this Motion to Remand are set

forth in the attached Memorandum in Support.

Respectfully submitted,

_____
**TIMOTHY J. FALCON (#16909)**
**JEREMIAH A. SPRAGUE (#24885)**
**FALCON LAW FIRM**
5044 Lapalco Blvd.
Marrero, LA 70072
Telephone: (504)341-1234
*Counsel for Plaintiff*

___ Fee_____
___ /Process_____
_X_ Dktd___CQ9
_✓_ CtRmDep___9
___ Doc. No.___9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROLAND P. JONES

VERSUS

THE LAW OFFICES OF ANTHONY
G. BUZBEE, P.C., ANTHONY G. BUZBEE,
STERN, MILLER & HIGDON, AND
JEFFREY M. STERN, RAMSEY JONES
AND CLARENCE JONES

CIVIL ACTION

NO. 04-1287

SECTION: N

MAG. DIV. 3

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of

record by facsimile and by placing a copy of same in the U.S. Mail, postage pre-paid, on this ___25___

day of _____May_____, 2004.

Respectfully submitted,

_____
**TIMOTHY J. FALCON (#16909)**
**JEREMIAH A. SPRAGUE (#24885)**
**FALCON LAW FIRM**
5044 Lapalco Blvd.
Marrero, LA 70072
Telephone: (504) 341-1234
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROLAND P. JONES                                    CIVIL ACTION

VERSUS                                             NO. 04-1287

THE LAW OFFICES OF ANTHONY                         SECTION: N
G. BUZBEE, P.C., ANTHONY G. BUZBEE,
STERN, MILLER & HIGDON, AND                        MAG. DIV. 3
JEFFREY M. STERN, RAMSEY JONES
AND CLARENCE JONES
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## O R D E R

CONSIDERING THE MOTIONS of plaintiff, Roland P. Jones;

   IT IS HEREBY ORDERED that the Motion to Remand is hereby GRANTED.  This matter

is remanded back in   its entirety to the Civil District Court for the Parish of Orleans

   New Orleans, Louisiana, this _____ day of _____, 2004.


                                          _____
                                          UNITED STATES DISTRICT JUDGE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROLAND P. JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1287** |
| **THE LAW OFFICES OF ANTHONY** | **SECTION: N** |
| **G. BUZBEE, P.C., ANTHONY G. BUZBEE,** | |
| **STERN, MILLER & HIGDON, AND** | **MAG. DIV. 3** |
| **JEFFREY M. STERN, RAMSEY JONES** | |
| **AND CLARENCE JONES** | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiff, Roland P. Jones, moves this Honorable Court to remand this case to the Civil District Court for the Parish of Orleans. The hearing on plaintiff's motion has been noticed for June 9, 2004 at 9:30 a.m. and oral argument has been requested. Buzbee Law Firm, P.C. and Anthony G. Buzbee's purported basis for removal is that plaintiff has fraudulently joined the non-diverse defendants, Ramsey Jones and Clarence Jones. Plaintiff submits that Ramsey Jones and Clarence Jones have not been fraudulently joined and are proper parties defendant. The bases for plaintiff's motion are that he has alleged and can prevail on various causes of action against Ramsey Jones and Clarence Jones, the non-diverse defendants.

Tortious conduct by the non-diverse defendants occurred in Texas and/or Louisiana. Plaintiff's claims may sound in Texas law, Louisiana law or both. Plaintiff submits that no choice

of law determination is necessary for the purposes of this remand motion.  Under Texas and/or

Louisiana law, plaintiff has at least six viable causes of action against the non-diverse defendants,

Ramsey Jones and Clarence Jones.  First, plaintiff has a statutory claim under the Texas Deceptive

Trade Practices - Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*  Second, under

Texas law, plaintiff has a cause of action for Common Law Fraud.  Third, under Texas law, plaintiff

has a cause of action for civil conspiracy.  Fourth, plaintiff has a Louisiana statutory claim under

the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*

Fifth, plaintiff has a Louisiana cause of action for fraud under Civil Code Art. 1953.  Sixth, plaintiff

has a Louisiana cause of action for civil conspiracy under Civil Code Art. 2324.  All these causes

of action are viable against Ramsey Jones and Clarence Jones for their independent tortious conduct.

 Accordingly, plaintiff submits that the non-diverse defendants, Ramsey Jones and Clarence Jones,

have been properly joined and defendants' allegations of fraudulent joinder are baseless.  This case

should be remanded.

## STATEMENT OF FACTS

This case is based on various causes of action involving the defendants.  Plaintiff was

formerly represented by these attorneys and law firms:  Anthony G. Buzbee, Esq., the Buzbee Law

Firm, P.C. (incorrectly named by plaintiff as "The Law Offices of Anthony G. Buzbee") (hereinafter

collectively referred to as "Buzbee Law"), Jeffry M. Stern, Esq. and the law firm of Stern, Miller &

Higdon (hereinafter collectively referred to as "Stern Law").   This representation was for personal

injuries in relation to a marine casualty which occurred on March 19, 2002.  Plaintiff came to be

represented by Buzbee Law and Stern Law through the activities, representations and influence of

2

defendants, Ramsey Jones and Clarence Jones.[1]  As the Court will see, Ramsey and Clarence were at all times the agents of Stern Law.  Once representation of plaintiff by Stern Law and Buzbee Law had been initiated, Ramsey and Clarence were active in managing certain aspects of plaintiff's case and in perpetuating the attorney-client relationship by acting as spokespersons on behalf of Stern Law and Buzbee Law.

Plaintiff has alleged professional negligence claims against Buzbee Law and Stern Law.  This arises out of the attorneys' representation in relation to the March 19, 2002 accident.  In addition to the personal injury action, plaintiff also had a valuable workers' compensation claim under the Longshore and Harborworkers' Compensation Act ("LHWCA") against his employer, Wilkinson Technologies, and its insurer, Louisiana Workers Compensation Corporation ("LWCC").  Buzbee Law and Stern Law settled plaintiff's tort claim and allowed plaintiff to sign a receipt and release giving up his claims against the third party defendant without prior written approval from LWCC and Wilkinson.  Thus, under 33 U.S.C. §933(g) of the LHWCA, plaintiff's workers' compensation claim is completely extinguished.  This is problematic because plaintiff received $119,915.70 out of a $325,000 tort settlement and, because of Buzbee Law and Stern Law's  negligence, plaintiff's future compensation claim worth over $600,000 in indemnity benefits alone was extinguished.  Yet plaintiff is totally disabled and still needs additional medical care including a spine surgery  because of the March 19, 2002 accident.

Yet there is much more going on here than mere professional negligence by Buzbee Law and Stern Law.  The cast of actors includes Ramsey Jones and Clarence Jones.  Ramsey and Clarence

---

[1]     Ramsey and Clarence Jones are brothers but are not related to the plaintiff, Roland Jones.

were, at the very least, paid agents of Stern Law. Ramsey and Clarence operated as case runners and administrators. They were instrumental in landing plaintiff's personal injury cases for Stern, managing medical care by transporting plaintiff to doctor appointments to and surgery in Houston and in overseeing the disbursement of loans from Stern to plaintiff. For their work, the runners were paid thousands of dollars to bring in the cases and exorbitant fees to transfer plaintiff to his medical appointments. Plaintiff has sued Ramsey and Clarence because they directly received the overcharges for travel services and received moneys for case running plaintiff's case to Stern which moneys may have come of plaintiff's settlement.

### The Involvement of Ramsey and Clarence: The Courtship of Roland Jones and James Billy Lafleur

Plaintiff's accident occurred on March 19, 2002. At that time, plaintiff was working for Wilkinson Technologies as a welder. Prior to the accident, plaintiff had been doing a welding job on a platform in the Gulf of Mexico off the coast of Louisiana. On his way out to the job, plaintiff had departed from Port Fourchon, Louisiana. When the job was finished, plaintiff was brought back ashore *via* a Tidewater, Inc. crew boat, M/V CHIEF. On return, M/V CHIEF was bringing plaintiff back into Port Fourchon.[2]

During the trip back into Fourchon, plaintiff and his co-employee at Wilkinson, James Billy Lafleur, moved outside to the vessel's deck to smoke and get out into the fresh air. Plaintiff and Lafleur had been friends for years. Plaintiff and Lafleur took a seat on the vessel's wooden benches.

---

[2]     Though plaintiff's March 19, 2002 accident case had no nexus to Texas, Buzbee Law filed suit in the Galveston Division of the U.S. District Court for the Southern District of Texas. Because of the lack of connection with Texas, Judge Samuel Kent *sue sponte* transferred the case to the Eastern District of Louisiana. See Exhibit 1, the *Sue Sponte Order of Transfer*. When the case settled, it was dismissed by Judge Berrigan of this court, under case no 03-1335, Sect. "C" on May 20, 2003.

Plaintiff and Lafleur sat, smoked and chatted in the company of other Wilkinson employees for as long as 1 hour. However, at some point, as the vessel moved with the seas, the wooden bench, on which plaintiff and Lafleur were sitting, broke slamming them onto the steel deck. In the accident, plaintiff injured his neck, low back and knee. Lafleur was also injured.

After returning to shore, plaintiff had returned to his home town of St. Martinville, Louisiana. The involvement of Ramsey and Clarence Jones began within 48 hours of the accident. These events are chronicled in Exhibits 2 and 3, which are the affidavits of plaintiff and Lafleur respectively.

On March 21, 2002, plaintiff was at a gas station in St. Martinville when he saw Ramsey Jones. Plaintiff had known Ramsey for some time prior. Plaintiff described the accident to Ramsey. Ramsey then implored plaintiff to have defendant, Jeffrey M. Stern, represent plaintiff for the accident. Ramsey indicated that with Stern representing him, plaintiff would receive because of Stern a substantial settlement which would prevent plaintiff from ever having to work again, that Stern would be obtain this settlement within one year, that Stern would pay plaintiff's bills and expenses and, importantly, that Stern would pay Ramsey money for bringing in plaintiff's case. Exhibit 2, pp. 1-2.

Plaintiff agreed to accompany Ramsey to Houston, Texas the next day to meet with Stern. Plaintiff also advised Ramsey that his friend and co-worker, James Billy Lafleur, had been injured in the same accident. Whereupon Ramsey brought plaintiff to Ramsey's house and called Lafleur on the phone. Plaintiff explained to Lafleur that Ramsey wanted to discuss the accident and attorney representation. Whereupon Ramsey took the phone, questioned Lafleur about the accident and advised that Jeffrey M. Stern was an excellent attorney who would represent Lafleur on his case.

5

Arrangements were made that plaintiff, Lafleur and Ramsey would travel to Houston to meet Stern the next morning.

At 4:30 a.m. the next day, Ramsey and his brother Clarence Jones arrived at plaintiff's home in St. Martinville. They departed in defendants' automobile for Houston, stopping in Lafayette on the way to pick up Lafleur at about 5:00 a.m. During the drive, Ramsey and Clarence perpetually advised plaintiff and Lafleur of Stern's great legal skill, great influence and that Stern would see to all of plaintiff's and Lafleur's financial needs.

Upon arrival at Stern's Houston office that morning, Ramsey and Clarence instructed plaintiff and Lafleur to wait in the lobby whilst they went into Stern's office with Stern. About 15 minutes later, plaintiff and Lafleur were brought into Stern's office whereupon they met with Stern regarding their respective cases. They discussed what are certainly privileged matters regarding their accidents and their injuries, with Stern all in the presence of Ramsey Jones and Clarence Jones in Stern's office. Stern, after questioning plaintiff and Lafleur about the accidents and injuries, stated "I smell money". Again, this was in the presence of Ramsey and Clarence. Shortly thereafter, plaintiff and Lafleur signed contracts for legal representation with Stern.

After the contracts were signed, Clarence told affiant and Lafleur that if they wanted money, Stern would give it to them immediately. Whereupon Stern asked affiant and Lafleur how much money they wanted and how much was needed for expenses. Stern then gave plaintiff a check for $1,500 and Lafleur a check for $1,000. Again, all this occurred in the presence or Ramsey Jones and Clarence Jones.

Under Stern's direction, that same day, Ramsey and Clarence brought plaintiff and Lafleur to see Dr. Lubar Jarolimek, a Houston orthopedic surgeon. After their appointments with Dr.

6

Jarolimek, Ramsey and Clarence then transported plaintiff and Lafleur back to Louisiana.   At a rest stop on the drive back from Houston, Ramsey approached plaintiff and told him that Stern had given Ramsey $2,000 for bringing in plaintiff's and Lafleur's cases.

**Keeping Medical Appointments and Handing Out Checks: Clarence Stays Involved**

Plaintiff and Lafleur returned to Houston on numerous occasions to see their doctors in Houston.  Plaintiff was instructed by Stern's office that he was to be transported to Houston by Clarence Jones. Plaintiff was informed that Clarence was paid $200 by Stern for each time Clarence drove plaintiff to Houston, and that Clarence was as also paid $200 for each time he drive Lafleur to Houston. Clarence received $200 each for plaintiff and Lafleur,  though Clarence drove plaintiff and Lafleur to Houston at the same time every time they went. Thus, Clarence was paid $400 each time he brought plaintiff and Lafleur to Houston.  It was the understanding of plaintiff and Lafleur that this was charged back against their cases.   Moreover, it was strongly suggested to plaintiff by Stern's office that he should use Clarence  for travel to medical appointments.

Interestingly, on one trip to Houston to see Dr. Jarolimek,  plaintiff saw Clarence hand out loan checks from Stern to a number of Stern's clients in the lobby of Dr. Jarolimek's office. Plaintiff and Lafleur received checks from Clarence written by Stern on that day.  Consistently,  throughout plaintiff's representation by Stern Law and Buzbee Law  Clarence Jones repeatedly assured plaintiff that Stern would take good care of plaintiff's case, which made plaintiff believe he was being well represented.

**The end of the LHWCA claim**

Yet plaintiff's case was not so well handled by Buzbee Law and Stern Law.   In May 2003, after Judge Kent transferred the case to New Orleans, plaintiff's case against Tidewater was settled.

7

The case settled for $325,000 in total.   Following settlement, the case was dismissed with prejudice by this court on Judge Berrigan's order.  (See FN 2).  On June 26, 2003 plaintiff signed the receipt and release settling all of his claims against Tidewater arising out of the March 19, 2002 accident. Prior to settlement, plaintiff had been receiving worker's compensation indemnity benefits under the LHWCA from Louisiana Worker's Compensation Corporation ("LWCC"), the worker's compensation insurer for Wilkinson Technologies.  Plaintiff underwent a neck and knee surgery arising out of his accident.  Rather than securing payment for plaintiff's medical treatment through LWCC, Stern Law and Buzbee Law advanced and/or guaranteed medical expenses for plaintiff at full value and charged these expenses back to plaintiff to the sum of $79,930.08.  This likely cost plaintiff tens of thousands of dollars over what he would have paid to LWCC in reimbursement of its lien because LWCC, as an insurance company, pays a mere fraction of the cost for medical care that an attorney pays on a partial advance payment and letter of guarantee as defendants did.[3]

Then, in September 2003, plaintiff's weekly worker's compensation benefits suddenly stopped.  Plaintiff was informed that LWCC deemed  forfeit all rights to future LHWCA benefits because  because his case against Tidewater had been finally settled without written approval. Subsequent investigation showed that neither Buzbee Law nor Stern Law obtained prior written approval from LWCC for the settlement and failed to file the appropriate form memorializing the settlement with the U.S. Department of Labor as required by § 33(g) of the LHWCA.  Thus, by operation of § 33(g), plaintiff's Longshore claim was extinguished forever. See *Nicklos Drilling Co. v. Cowart*, 927 F.2d 828, 24 BRBS 93 (CRT) (5th Cir.1991) (en banc), aff'd on other grounds, 505

---

[3]      Actually, in such circumstances, LWCC would likely have waived all its lien and contributed to the third party settlement in order to settle its substantial future compensation exposure.

U.S. 469, 26 BRBS 49 (CRT)(1992).   This is problematic because plaintiff cleared only $119,915.70 from the tort settlement  yet he is permanently and totally disabled, has lost a  future LHWCA indemnity benefits claim worth over $600,000,  is in need of a spine surgery according to his treating neurosurgeon related to the March 19, 2002 accident and has lost his LHWCA medical benefits because of defendants.

**Where did all the money go?**

However, in addition to professional negligence, plaintiff is also the victim of unfair and fraudulent practices.  As noted above, plaintiff was charged exorbitant sums for transport to medical appointments to Houston which Stern Law arranged.  Attached as Exhibit 4 is the "Settlement Affidavit" prepared by Buzbee Law relative to the settlement of plaintiff's tort claim which itemizes expenses.  As formal discovery has yet to begin, this form is the only accounting which plaintiff has of expenses relative to representation by Buzbee Law and Stern Law.        At page two of the Settlement Affidavit, under the "Stern & Miller Expenses" heading, there is a itemization of $3,826.29 for "travel/lodging".  Plaintiff suspects that a large portion of these travel/lodging expenses may in fact be overcharges travel paid to Clarence.  Moreover, "Loans" of $39,000 are listed.  Plaintiff is not at all certain that he received $39,000 in total loans and it is possible that this itemization may have been used to hide runner fees - - although plaintiff cannot yet prove this.

While it is not yet completely clear where the money went, it is very apparent that Ramsey and Clarence were at all material times the paid agents of at least Stern Law.  Ramsey and Clarence were paid exorbitant sums of money to bring plaintiff and Lafleur's cases to Stern, to transport plaintiff and Lafleur to medical appointments in Houston and to oversee loan disbursements to plaintiff and Lafleur.  Plaintiff's claims against Ramsey and Clarence are based on this conduct in

9

that it was used to deprive him of money with overcharges for travel.   Also, Such combinations of attorneys paying case runners are illegal under Texas and Louisiana law.  (Texas law prohibits such conduct, which it calls "barratry", V.T.C.A., Penal Code § 38.12; Louisiana law prohibits case solicitation for money as well, LSA-R.S. 37:219.)   Moreover, plaintiff may have suffered the damage of being charged for case runner expenses. Ramsey and Clarence are clearly co-conspirators in a civil conspiracy to illegally obtain clients and overcharge clients for purported services - - at least in the case of plaintiff and Lafleur.  To the extent that plaintiff has been over charged for travel and possibly charged for the cost of case running, he has viable causes of action against Ramsey and Clarence and this case should be remanded.

## LAW AND ARGUMENT

The collectively named Buzbee Law defendants, have based their removal of this case on the allegation that Ramsey and Clarence Jones have been fraudulently joined as defendants to defeat the complete diversity requirement necessary for federal subject matter jurisdiction. "Fraudulent joinder of a defendant can be established in two ways: (1) actual fraud in pleading of jurisdictional facts, or (2) inability of plaintiff to establish a cause of action against a non-diverse party." *McKee v. Kansas City So. Railway Co.*, 358 F.3d 329, 333 (5th Cir. 2004).   Buzbee Law has made no allegation of fraud in the pleading of jurisdictional facts - - it is clear that Ramsey and Clarence are Louisiana citizens and are therefore non-diverse.  Buzbee Law's only stated basis for removal is that Ramsey and Clarence  have been fraudulently joined as defendants because they are non-diverse for the purpose of defeating diversity jurisdiction.  Thus, the relevant fraudulent joinder question here is whether plaintiff has a "valid cause of action" against Ramsey and/or Clarence Jones.  *id.* at 333, citing *Travis v. Irby*, 323 F.3d 664 (5th Cir. 2003).

10

The *McKee* decision, *supra*, came down in January 2004 in the wake of the Fifth Circuit's decision in *Travis v. Irby*, *supra*.   The *Travis* court noted that there had been some ambiguity in setting out the standard for fraudulent joinder in the Fifth and other circuits.   *Travis* at 647. ("Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.") The *Travis* court's decision gives a scholarly history of the sundry standards used in the past for addressing allegations of fraudulent joinder relating to removal and gives clarity to fraudulent joinder analysis.

The *Travis* court went on to state that the burden of proof is on the "defendant to establish fraudulent joinder of non-diverse co-defendants." *McKee* at 329.   "The burden of persuasion on those who claim fraudulent joinder is a heavy one." *id.* at 334, *citing Travis* at 649. "The district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant. *id.*   In analyzing the fraudulent joinder claim, "the district court may 'pierce the pleadings' and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Travis* at 649, citing *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

Thus, the defendant alleging fraudulent joinder bears the substantial burden of proof to show plaintiff has no viable claims against the non-diverse defendant.  However, standard by which the viability of plaintiff's claims is determined is as follows:

> [T]he court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned. If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder. This *possibility, must be reasonable*, not merely theoretical.

11

*Travis* at 648, quoting *Badon v. RJR Nabisco, Inc.*, 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added in *Travis*).   Therefore, in the instant case, Buzbee Law must carry the heavy burden of proving that  there is no "reasonable basis" for predicting that  plaintiff does not have "any possibility of recovery" against Ramsey and Clarence Jones.  If there is any reasonable basis for the liability of Ramsey and Clarence then there is no fraudulent joinder and the case should be remanded.  Buzbee law has come forward with absolutely no evidence and cannot because it is a simple fact that plaintiff has viable causes of action against Ramsey and Clarence Jones.

### Plaintiff's State Law Causes of Action against Ramsey and Clarence Jones

Plaintiff points out that there has been no discovery at all conducted in this case.  Despite this, plaintiff has developed facts which support claims against Ramsey and/or Clarence Jones.  First, plaintiff has a claim under the Texas Deceptive Trade Practices - Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*, for Ramsey and Clarence causing plaintiff to become represented by Stern so plaintiff could be overcharged for the travel  "services" and, possibly, to finance case running.  If just one of these points is true, plaintiff has a cause of action on which he can recover.  Second, under Texas law, plaintiff has a cause of action for Common Law Fraud again for the exercise of undue influence to entice plaintiff into a contract with Stern Law  so he could be overcharged for travel services and, possibly, used to finance case running.  Third, under Texas law, plaintiff has a cause of action for civil conspiracy because Ramsey, Clarence and, at least, Stern Law, conspired to create an attorney-client relationship where plaintiff could be overcharged for the travel services and possibly case running expenses.  Fourth, plaintiff has a  Louisiana statutory law claim under the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et*

12

*seq.*, again for Ramsey and Clarence causing plaintiff to become represented by Stern so plaintiff could be overcharged for the travel services and possibly for case runner fees. Fifth, plaintiff has a Louisiana cause of action for fraud under Civil Code Art. 1953, again for the exercise of undue influence to entice plaintiff into a contract with Stern so he could be overcharged for travel and possibly charged for case runner expenses. Sixth, plaintiff has a Louisiana cause of action for civil conspiracy under Civil Code Art. 2324, again because Ramsey, Clarence and, at least, Stern Law conspired to create an attorney-client relationship where plaintiff could be overcharged and otherwise used for financial gain. All of these causes of action arise from the non-diverse defendants' tortious conduct, in addition to the conduct of the other defendants. Accordingly, plaintiff submits that the non-diverse defendants, Ramsey Jones and Clarence Jones, have been properly joined and Buzbee Law's allegations of fraudulent joinder are baseless. This case should be remanded.

Plaintiff notes that no discovery has yet been conducted in this case. Beyond the personal knowledge of plaintiff and Lafleur and the attached documents, plaintiff has not had access to other sources of proof - - yet. However, for purposes of fraudulent joinder analysis, plaintiff submits that the Court should give the benefit of any doubts to plaintiff related to the viability of his claims against Ramsey and Clarence.

## The Texas Law Claims

Under Texas law, acts constituting barratry are a felony. V.T.C.A. Penal Code, § 38.12. Barratry relates to the solicitation of professional employment, such as legal services, in exchange for money or other economic benefit. *id.* In the instant case, if Ramsey's admission to plaintiff that Stern paid him $2,000 for landing plaintiff and Lafleur as clients then barratry has occurred. The attorney-client relationship, born of barratry, then became the modus by which Ramsey, Clarence

13

and Stern took unfair advantage of plaintiff by overcharging him for travel services and possibly charging him for the runner's fees themselves.  Moreover, under Texas law, the simple act of malpractice may give rise to a situation where the attorney fee paid by plaintiff out of the settlement, $85,742.81, is forfeit. *Burrow v. Arce*, 997 S.W.2d 229, 242 (Tex. 1999).  Thus, to the extent that any inappropriate expenses may have been padded into attorney fees, these are also recoverable by plaintiff because the attorney fees are forfeit.  These actions then give rise to various causes of action under Texas law to plaintiff against Ramsey and Clarence.

## 1.  Plaintiff's claim under the Texas Deceptive Trade Practices - Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*

The Texas Deceptive Trade Practices - Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.* (hereinafter "Texas DTPA") exists to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty . . . ." Texas DTPA § 17.44.  For conduct violative of the Texas DTPA, a victim is entitled to actual damages and treble damages from the defendant. Texas DTPA, § 17.50.  To prevail on a Texas DTPA claim, a plaintiff must show the following:

1) The he is a "consumer" within the definition of the Texas DTPA;

2) That the defendant committed a false, misleading, deceptive or unconscionable act; and

3) That the act resulted in actual damages.

*Brittan Comm. Intl. Corp. v. Southwestern Bell Tele. Co.*, 313 F.3d 899, 907 (5th Cir. 2002).

Under the Texas DTPA, a "consumer" includes anyone who purchases a service and which service is the basis of the complaint. *id*.  Moreover, "consumer" specifically refers to a client who

14

becomes represented by an attorney. *Sterber v. Hunter*, 221 F.3d 701, 727 (5th Cir. 2000). Clearly, plaintiff is a consumer within the meaning of the Texas DTPA as he received services from Ramsey and Clarence in the form of exorbitantly expensive transportation, in addition to being brought to Stern.

Under the Texas DTPA, a defendants' unconscionable act gives rise to liability. Unconscionability occurs when there is a "gross disparity between the value received and consideration paid, in a transaction involving transfer for consideration." §17.50(a)(3). Clearly, this is the case where plaintiff has been overcharged for travel and where he may have been charged for barratry. Moreover, the overcharges are the damages. Plaintiff has a viable Texas DTPA claim against Ramsey and Clarence. The case should be remanded.

## 2. Plaintiff's Texas Common Law Fraud claim for the exercise of undue influence to entice plaintiff into a contract with Stern so he could be overcharged and illegally charged for barratry

Plaintiff has a common-law fraud claim against Clarence and Ramsey because they made false representations regarding Stern's abilities to induce plaintiff into signing a contract with Stern. Common-law fraud requires a plaintiff to show that:

> (1) the defendant made a representation that was both material and false;
>
> (2) at the time the representation was made, the defendant knew it was false or was
>
>  reckless as to its truth;
>
> (3) the defendant intended that the plaintiff rely on the representation; and
>
> (4) the plaintiff justifiably relied on the representation and was injured as a result.

*Ernst & Young L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex.2001). Relating to common-law fraud and fraudulent joinder analysis, the question is whether plaintiff has any chance

of recovery.  Clearly plaintiff does.

Texas common-law fraud element 1: material and false representations.  Ramsey and Clarence assured plaintiff that Stern would skillfully represent his interests and that Stern would obtain a substantial recovery which would take care of plaintiff's financial needs.  These representations were materially false because Stern did not handle the case, he farmed it out to Buzbee Law and the case was malpracticed.  Moreover, plaintiff was overcharged for travel "services" provided by Clarence and may have been taxed with the cost of Clarence's illegal barratry.

Texas common-law fraud element 2: when the representation was made defendant knew it was false or reckless as to its truth.  The statements by Ramsey and Clarence that Stern would skillfully represent his interests and that Stern would obtain a substantial recovery which would take care of plaintiff's financial needs was at least reckless because the case was at least reckless because plaintiff was charged excessive expenses and illegal barratry fees.

Texas common-law fraud element 3: the defendant intended plaintiff rely on the representation.  Obviously Ramsey and Clarence sought to induce plaintiff to hire Stern as his attorney so they could take advantage of him.

Texas common-law fraud element 4: plaintiff justifiably relied on the statement to his detriment.  Plaintiff relied on representations that Stern would zealously represent him and obtain a substantial recovery - - plaintiff's detriment was that he was overcharged, perhaps illegally charged and his case was malpracticed.

Clearly, plaintiff has a reasonable possibility of prevailing on a Texas common-law fraud claim against Ramsey and Clarence.  They are proper defendants and the case should be remanded.

**3.  Plaintiff's Texas law, cause of action for civil conspiracy**

16

Texas law recognizes a common law cause of action for civil conspiracy. The elements of the tort are as follows:

> A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means . . . The 'gist of a civil conspiracy' is the injury the conspirators intend to cause. Civil conspiracy requires specific intent. For a civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement.

*Char King, Inc., et al. v. GTE Mobilnet of Houston, Inc., et al.*, 2004 WL 964224, *25 (Tex. App. Houston Div.), quoting *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996). Under the instant facts, the concerted action of Ramsey, Clarence and Jeffrey M. Stern, at least, constitutes an actionable civil conspiracy. The unlawful purposes of this combination to illegally solicit representation of personal injury clients and, plaintiff submits, to finance that conduct with charges against plaintiff. Also, there were overcharges against plaintiff for services by Ramsey and Clarence. This all amounts to a civil conspiracy to improperly deprive plaintiff of monies and for the benefit of Ramsey, Clarence and the other conspirators. Ramsey and Clarence are proper defendants. This case should be remanded.

### The Louisiana Law Claims

Under Louisiana law, payment of case runners for the solicitation of clients is a felony. LSA-R.S. 37:219. In the instant case, illegal solicitation occurred if Ramsey's statement that Stern paid him $2,000 to land plaintiff and Lafleur as clients is true. As noted above, the attorney-client relationship then became the means by which Ramsey, Clarence and Stern took unfair advantage of plaintiff by overcharging him for travel services and possibly charging him for the runner's fees themselves. These actions then give rise to various causes of action under Louisiana law to plaintiff

17

against Ramsey and Clarence.

**4.  Plaintiff's claim under the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.***

The Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.* prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." R.S. 51:1405.  (Hereinafter referred to as "LUTPA")  "Louisiana law provides a private cause of action for any person who suffers damages for unfair or deceptive acts . . . where the action constitutes a violation of [LUTPA]."  *Shaw Ind., Inc. v. Brett, et al.*, 884 F.Supp 1054, 1056 (M.D. La. 1994).   A trade practice is deemed unfair when it "offends established policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . ." *Omnitech Int'l, Inc. v. Cloros Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994).  A consumer is broadly defined by LUTPA as anyone who "uses, purchases, or leases goods or services."  R.S. 51:1402(1).

The use of case runners to solicit clients is clearly "immoral, unethical, oppressive, unscrupulous [and] substantially injurious", in addition to being a felony in and of itself.  The financing of case runners by charging back against the client and overcharging clients for other services is clearly violative of LUTPA.   Plaintiff has a viable cause of action against Ramsey and Clarence under LUTPA.  This case should be remanded.

**5.  Plaintiff's Louisiana cause of action for fraud under Civil Code Art. 1953**

Louisiana Civil Code Art. 1953 defines actionable fraud:

> Fraud is a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.

18

"The two elements necessary to establish legal fraud are [1] an intent to defraud or gain unfair advantage, and [2] a resulting loss or damage. *First Downtown Development v. Cimochowski*, 613 So.2d 617, 677 (La. App. 2nd Cir. 1993); *Mooers v. Sosa*, 798 So.2d 200, 207 (La. App. 5th Cir. 2001).

Respecting element one, did Ramsey and Clarence intend too defraud or gain unfair advantage over plaintiff? Yes. By inducing plaintiff into an attorney-client relationship with Stern Law, so that plaintiff could be used to fund excessive travel expenses paid to Ramsey and Clarence, the intent to place plaintiff at an unfair advantage is obvious, or at least can be inferred. Moreover, if plaintiff's monies were used to fund case running, then their intent is all more the obvious. Respecting element two, has plaintiff been damaged? Yes, *via* overcharges for travel and, possibly, having to pay runner fees.

Clearly, plaintiff has viable causes of action against Ramsey and Clarence. This case should be remanded.

### 6.  Plaintiff's Louisiana cause of action for civil conspiracy under  Civil Code Art. 2324

Louisiana allows a private action for a conspiracy which results in damages. C.C. Art. 2324. The particulars of the action have been explained by the courts:

> Civil Code article 2324 does not by itself impose liability for a civil conspiracy. The actionable element in a claim under this article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetuate and which they actually commit in whole or in part. In order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury.

This conduct gives rise to solidary liability amongst the co-conspirators. C.C. Art. 2324.

19

In the instant case, the actionable conduct would be the overcharging of plaintiff for travel expenses. Additionally, if runner fees were paid from plaintiff's monies, then there is additional tortious and illegal conduct. In necessarily follows that if these acts occurred then there was an agreement to accomplish them and that meeting of the minds involved Ramsey and Clarence. Therefore, there is a viable civil conspiracy cause of action against Ramsey and Clarence. This case should be remanded.

### Conclusion

In conclusion, plaintiff has at least six viable state law causes of action under Texas and Louisiana law against Ramsey and Clarence Jones. Under the appropriate fraudulent joinder analysis, the Court should view these causes of action in a light most favorable to plaintiff and should pierce the pleadings where necessary to find these causes of action. Accordingly, plaintiff submits that the non-diverse defendants, Ramsey Jones and Clarence Jones, have been properly joined and Buzbee Law's allegations of fraudulent joinder are baseless. This case should be remanded.

Respectfully submitted,

_____
JEREMIAH A. SPRAGUE, T.A. (24885)
TIMOTHY J. FALCON (16909)
FALCON LAW FIRM
5044 Lapalco Blvd.
Marrero, LA  70072
(504) 341-1234
COUNSEL FOR PLAINTIFF, ROLAND JONES

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 MAY 12  AM II: 53

LORETTA G. WHYTE
ENTERED

MAY 0 7 2003

Michael N. Milby, Clerk of Court

ROLAND JONES                        §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §    CIVIL ACTION NO. G-02-229
                                    §
TIDEWATER MARINE, L.L.C., et al.    §
                                    §
        Defendants.                 §

03-1335
SECT. C MAG. 4

SUA SPONTE ORDER OF TRANSFER

On April 4, 2002, Plaintiff Roland Jones filed this Jones Act lawsuit against Defendants

Tidewater Marine, L.L.C., Tidewater, Inc., Twenty Grand Offshore, Inc., and T. Benetee, L.L.C.

None of the Parties contested venue in Galveston, and the case proceeded on schedule.  In

preparation for its May 6, 2003 docket call, however, the Court reviewed the record and realized that

this case bears absolutely no connection to Galveston.  The Court allowed the Parties to appear at

docket call in hopes that the case–like most maritime personal injury cases–might settle, but the

Parties were unable to reach an amicable resolution.  Thus, because this case has no connection

whatsoever to this forum but evinces many connections to the Eastern District of Louisiana, the

Court hereby sua sponte TRANSFERS this case to the Eastern District of Louisiana, New Orleans

Division, pursuant to 28 U.S.C. § 1404, to serve the interests of justice and for the convenience of

witnesses and parties.  All existing docket control deadlines, including the trial setting, are hereby

VACATED.  This Court respectfully defers the scheduling of those matters, as well as any other

unresolved issues, to the transferee court.  Each Party is to bear its own taxable costs and expenses

incurred herein to date.

Fee_____
Process____
X  Dktd_____
___ CtRmDep_____
Doc. No._____

IT IS SO ORDERED.

DONE this _____ day of May 2003, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

2

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

## <u>AFFIDAVIT</u>

BEFORE ME, the undersigned notary public, came and appeared affiant:

ROLAND P. JONES, JR.

who, upon being duly sworn, did attest as follows:

1) That affiant is presently the plaintiff in the matter of *Roland P. Jones v. The Law Offices of Anthony G. Buzbee, P.C., et al.*, CV-04-1287, Section "N", Magistrate 1, United States District Court for the Eastern District of Louisiana;

2) That on or about March 19, 2002 he was involved in an accident aboard the M/V CHIEF, a Tidewater vessel, in which he suffered injuries;

3) That on repeated occasions prior to the March 19, 2002, Ramsey Jones, the defendant herein, had told affiant that if affiant were injured in an offshore accident, Ramsey Jones could connect affiant with attorneys would obtain a substantial recovery for affiant.

4) That on March 21, 2002, two days after his accident, affiant saw Ramsey Jones at a gas station in St. Martinville, Louisiana. Affiant informed Ramsey Jones that affiant had been in a maritime accident on March 19, 2002;

5) That Ramsey Jones did tell affiant that affiant needed legal representation for the matter and that he knew of a good lawyer named Jeffrey M. Stern, a defendant in the above referenced action, who could represent affiant and that if affiant were represented by Stern then Ramsey Jones told affiant:

  - That affiant would be well taken care of, which affiant understood to mean that Stern would obtain a substantial recovery or settlement;

  - That affiant would not have to ever work again, which affiant understood to mean that Stern would obtain a substantial recovery or settlement;

  - That Stern would see to it that affiant was paid his settlement with one year;



- That affiant's bills and expenses would be paid by Stern; and

- That Stern would pay money to Ramsey Jones for bringing in affiant's claim for Stern.

6) Affiant then agreed to go with Ramsey Jones to Houston, Texas the next day to meet with Stern;

7) Affiant then informed Ramsey Jones that his friend and co-worker, James Billy Lafleur, had also been injured in the same March 19, 2002 accident whereupon Ramsey Jones told affiant to contact Lafleur to see if he also would meet with Stern;

8) Whereupon affiant accompanied Ramsey Jones to Ramsey Jones' house whereupon they telephoned Lafleur. Affiant told Lafleur that Ramsey Jones knew of a good attorney in Houston, Texas who could represent Lafleur in regards to the March 19, 2002 accident and that Ramsey Jones wanted to talk to Lafleur;

9) Whereupon Ramsey Jones took the phone and questioned Lafleur about the accident, Ramsey Jones then told Lafleur that the attorney in Houston, Stern, would take care of everything. Ramsey Jones then concluded the call and informed affiant that Lafleur would also be going to Houston the following day to meet with Stern;

10) The following morning, March 22, 2002, at 4:30 a.m., Ramsey Jones and Clarence "Scoby" Jones, also a defendant herein, arrived at affiant's home with an automobile to drive affiant from St. Martinville to Houston;

11) At Lafayette, Louisiana, Ramsey and Clarence Jones picked up Lafleur and the foursome traveled to Houston;

12) During the drive to Houston, Ramsey Jones and Clarence Jones told affiant and Lafleur at length of Stern's great skill as an attorney, of his great influence, and of how Stern would take care of all of affiant and Lafleur's expenses and financial needs and would get them a substantial amount of money for their claims;

13) Upon arrival at Stern's office that morning, Ramsey Jones and Clarence Jones went into Stern's private office with instructions to affiant and Lafleur to wait in the lobby. After approximately 15 minutes, affiant and Lafleur were brought into Stern's office whereupon they met with Stern regarding their respective cases, discussed their accidents and their injuries all in the presence of Ramsey Jones and Clarence Jones. Stern further told affiant and Lafleur regarding their cases that "I smell money". Shortly thereafter affiant and Lafleur signed a contract of representation with Stern.

14) After the contract was signed, Clarence Jones told affiant and Lafleur that if they

Page 2 of 4

wanted money, Stern would give it to them immediately. Whereupon Stern asked affiant and Lafleur how much money they wanted and how much was needed for expenses. Stern gave affiant a check for $1,500 and Lafleur a check for $1,000. All this occurred in the presence or Ramsey Jones and Clarence Jones.

15) Under Stern's direction, Ramsey Jones and Clarence Jones, then brought affiant and Lafleur to see Dr. Lubar Jarolimek in Houston that same day. After their appointments with Dr. Jarolimek, Ramsey Jones and Clarence Jones then transported affiant and Lafleur back to Louisiana.

16) At a rest stop on the drive back from Houston, Ramsey Jones approached affiant and told him that Stern had given Ramsey Jones $2,000 for bringing in affiant's and Lafleur's cases.

17) Affiant and Lafleur returned to Houston on numerous occasions to see their doctors in Houston. Affiant was informed that Clarence Jones was paid $200 by Stern for each time Clarence Jones drove affiant to Houston, and that Clarence Jones was as also paid $200 for each time he drive Lafleur to Houston, though Clarence Jones drove affiant and Lafleur to Houston at the same time.

18) That on one occasion, affiant saw Clarence Jones hand out loan checks from Stern to a number of Stern's clients in the lobby of Dr. Jarolimek's office, in addition to a loan check to affiant from Stern.

19) That throughout affiant's representation by Stern, Stern, Miller & Higdon, Anthony G. Buzbee and the Buzbee Law Firm, P.C., Clarence Jones repeatedly assured affiant that Stern would take good care of affiant's case, which made affiant believe he was being well represented.

20) That affiant was told by Rosemary Snyder, a secretary, paralegal or office manager at Stern, Miller & Higdon, that affiant was supposed to be brought to medical appointments in Houston by Clarence Jones.

21) That defendant, Anthony G. Buzbee, advised affiant that affiant should get an itemized list of all expenses of Stern, Miller & Higdon associated with the case from Stern., Miller & Higdon because other clients referred to Buzbee by Jeffrey M. Stern had complained about excessive expenses charged on their cases by Stern, Miller & Higdon.

*Roland P Jones Jr*

ROLAND P. JONES, JR.

**SWORN AND SUBSCRIBED before me,**
the undersigned notary, this 25th day of
May 2004.

_____
Notary Public
JEREMIAH A. SPRAGUE
La. Bar No. 24885

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

## <u>AFFIDAVIT</u>

BEFORE ME, the undersigned notary public, came and appeared affiant:

JAMES BILLY LAFLEUR

who, upon being duly sworn, did attest as follows:

1) That affiant is presently the plaintiff in the matter of *James Billy Lafleur v. The Law Offices of Anthony G. Buzbee, P.C., et al.*, CV-04-1017, Section "L", Magistrate "O", United States District Court for the Western District of Louisiana;

2) That on or about March 19, 2002 he was involved in an accident aboard the M/V CHIEF, a Tidewater vessel, in which he suffered injuries;

3) That on or about March 21, 2002, two days after his accident, affiant received a telephone call from his friend and co-employee, Roland Jones, who was also involved in the accident of March 19, 2002. Roland Jones informed affiant that an individual named Ramsey Jones, a defendant in the above referenced action, knew of a good attorney in Houston, Texas who could represent Lafleur in regards to the March 19, 2002 accident and that Ramsey Jones wanted to talk to affiant.

4) Whereupon, Ramsey Jones took the phone and questioned affiant about the accident, Ramsey Jones then told affiant that the attorney in Houston, Stern, would take care of everything. Affiant then agreed to accompany Roland Jones and Ramsey Jones to Houston the following day to meet with Stern;

5) The following morning, March 22, 2002, at 5:00 a.m., Ramsey Jones and Clarence "Scoby" Jones, also a defendant herein, along with Roland Jones, met affiant in Lafayette with a motor vehicle and drove affiant to Houston;

6) During the drive to Houston, Ramsey Jones and Clarence Jones told affiant and Roland Jones at length of Stern's great skill as an attorney, of his great influence, and of how Stern would take care of all of affiant and Lafleur's expenses and financial needs and would get them a substantial amount of money for their claims;

7) Upon arrival at Stern's office that morning, Ramsey Jones and Clarence Jones went into Stern's private office with instructions to affiant and Roland Jones to wait in the lobby. After approximately 15 minutes, affiant and Roland Jones were brought into



Stern's office whereupon they met with Stern regarding their respective cases, discussed their accidents and their injuries all in the presence of Ramsey Jones and Clarence Jones. Stern further told affiant and Roland Jones regarding their cases that "I smell money". Shortly thereafter affiant and Roland Jones signed a contract of representation with Stern.

8)   After the contract was signed, Clarence Jones told affiant and Roland Jones that if they wanted money, Stern would give it to them immediately. Whereupon Stern asked affiant and Roland Jones how much money they wanted and how much was needed for expenses. Stern gave affiant a check for $1,000 and Roland Jones a check for $1,500. All this occurred in the presence or Ramsey Jones and Clarence Jones.

9)   Under Stern's direction, Ramsey Jones and Clarence Jones, then brought affiant and Roland Jones to see Dr. Lubar Jarolimek in Houston that same day. After their appointments with Dr. Jarolimek, Ramsey Jones and Clarence Jones then transported affiant and Roland Jones back to Louisiana.

10)  Affiant and Roland Jones returned to Houston on numerous occasions to see their doctors in Houston. Affiant was informed that Clarence Jones was paid $200 by Stern for each time Clarence Jones drove affiant to Houston, and that Clarence Jones was as also paid $200 for each time he drive Roland Jones to Houston, though Clarence Jones drove affiant and Roland Jones to Houston at the same time.

11)  That on one occasion, affiant saw Clarence Jones hand out loan checks from Stern to a number of Stern's clients in the lobby of Dr. Jarolimek's office, in addition to a loan check to affiant from Stern.

12)  That throughout affiant's representation by Stern, Stern, Miller & Higdon, Anthony G. Buzbee and the Buzbee Law Firm, P.C., Clarence Jones repeatedly assured affiant that Stern would take good care of affiant's case, which made affiant believe he was being well represented.

13)  That affiant was told by Rosemary Snyder, a secretary, paralegal or office manager at Stern, Miller & Higdon, that affiant was supposed to be brought to medical appointments in Houston by Clarence Jones.

14)  That defendant, Anthony G. Buzbee, advised affiant that affiant should get an itemized list of all expenses of Stern, Miller & Higdon associated with the case from Stern, Miller & Higdon because other clients referred to Buzbee by Jeffrey M. Stern had complained about excessive expenses charged on their cases by Stern, Miller & Higdon.

JAMES BILLY LAFLEUR

SWORN AND SUBSCRIBED before me,
the undersigned notary, this 25th day of
May 2004.

Notary Public
Jeremiah A. Sprague
La. Bar No. 24885

**ROLAND JONES**
**VS.**
TIDEWATER
JUNE 24,2003

| | | |
|---|---|---|
| **TOTAL SETTLEMENT** | $ | **325,000.00** |
| ATTORNEYS FEE (REDUCED) | $ | 85,742.81 |
| BALANCE AFTER FEES | $ | 239,257.19 |

**ANTHONY G. BUZBEE EXPENSES:**

| | | |
|---|---|---|
| POSTAGE, FAX, DELIVERY & COPIES | $ | 815.66 |
| FILING/SERVICE FEE | $ | 100.00 |
| MEDICAL/TAX RECORDS | $ | 1,035.40 |
| TRAVEL | $ | 90.00 |
| TELEPHONE | $ | 53.60 |
| EXPERT: MCCOIN | $ | 900.00 |
| DEPOSITION | $ | 4,783.20 |
| MEDIATION | $ | 1,500.00 |
| LOAN | $ | 200.00 |
| REFUND FROM IRS | $ | (46.00) |
| CLOSING COST | $ | 150.00 |
| **ANTHONY G. BUZBEE PAID EXPENSES** | **$** | **9,581.86** |
| LESS TIDEWATER ITEMIZED ADVANCES | $ | (8,000.00) |
| **BALANCE OF BUZBEE EXPENSES.** | **$** | **1,581.86** |

ℛ ℐRJ


EXHIBIT
4

**STERN & MILLER EXPENSES:**

| | | |
|---|---|---:|
| LOANS | $ | 39,000.00 |
| ANTHONY BUZBEE | $ | 8,000.00 |
| DR LABOR JAROLIMEK | $ | 8,000.00 |
| BUCKLEY INVESTIGATION | $ | 1,637.12 |
| DR AJAY BINDAL | $ | 14,415.00 |
| TRAVEL/LODGING | $ | 3,826.39 |
| FEDERAL EXPRESS/DELIVERIES | $ | 342.19 |
| LONG DISTANCE/COPIES/FAXES | $ | 404.55 |
| POUCHAUX'S PHARMACY | $ | 349.44 |
| MEMORIAL SURGICAL CENTER | $ | 1,000.00 |
| GREATER HOUSTON ANESTHESIOLOGY | $ | 1,200.00 |
| ST LUKE'S HOSPITAL | $ | 16,857.00 |
| DR BASKIN | $ | 500.00 |
| **TOTAL CASE EXPENSES** | **$** | **94,565.69** |

**OUTSTANDING MEDICAL TO BE PAID:**

| | | |
|---|---|---:|
| ORTHOPEDIC CARE CENTER | $ | 1,566.00 |
| NORTH HOUSTON IMAGING | $ | 6,150.00 |
| SIMON'S PHARMACY | $ | 203.14 |
| AJAY BINDAL M.D. | $ | 13,631.00 |
| GREATER HOUSTON ANESTHESIOLOGY | $ | 420.00 |
| MEMORIAL SURGICAL CENTER | $ | 6,000.00 |
| SHAROLYN SIMMONS, M.D. | $ | 800.00 |
| SINGLETON & ASSOCIATES | $ | 89.00 |
| GULF COAST PATHOLOGY ASSOCIATES | $ | 153.00 |
| REHAB CENTER IBERIA MEDICAL CENTER | $ | 1,601.50 |
| **TOTAL O/S MEDICAL BILLS** | **$** | **30,609.64** |

**TO BE PAID BY A.G.BUZBEE**

| | | |
|---|---|---:|
| **TOTAL EXPENSES & O/S MEDICAL** | **$** | **126,757.19** |
| | | |
| **BALANCE TO ROLAND JONES** | **$** | **112,500.00** |
| **LOAN AFTER SETTLEMENT DATE** | **$** | **2,500.00** |
| **GUARANTEED** | **$** | **115,000.00** |

RJ

BUZBEE LAW OFFICE            906-5556415    10/14/2003 18:33

I, ROLAND JONES, certify that I have reviewed and understand the breakdown of the settlement funds in this case, and state that the same has been explained to me by my attorneys to my satisfaction. It is also understood that all of the above medical bills have been paid out of my settlement funds. However, if any of the above health care providers, or any other health care provider ever submits additional bills, such bills shall be my sole responsibility and the law firm of Anthony G. Buzbee, or the law firm of Stern & Miller, and/or Jeffrey Stern shall in no way be responsible for the payment of these bills.

※ I have received an additional check of
$ 4 915. 70 .

_____
ROLAND JONES

_____
JUNE 24, 2003

SUBSCRIBED AND SWORN TO BEFORE ME the undersigned authority, on this the __26th__ day of __June__ , 2003.



_____
NOTARY PUBLIC, In and for
the State of Texas

My Comm. Exp.: __4/19/05__

Roland Jones
STERN EXPENSE AUDIT

## Orthopedic Care Center (Jarolimek)

Tot   Charges        $6,636.00
Tot   Payment/Stern   ($5,000.00)   Stern Claims Paid $6,000.00 = $1000.00 Over
Tot   Payment/Other   ($   70.00)
Tot   Due            $1,566.00

## St. Luke's Episcopal Hospital

Tot   Charges        $13,508.33
Tot   Payments       ($16,857.00)
Tot   Due            ($ 3,348.67)   Credit to Stern's Amex - Still On Stern's Expenses
                                    = $3,348.67

Total Adjustments Due to Client from Stern       $4,348.67

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROLAND P. JONES                              CIVIL ACTION

VERSUS                                       NO. 04-1287

THE LAW OFFICES OF ANTHONY                   SECTION: N
G. BUZBEE, P.C., ANTHONY G. BUZBEE,
STERN, MILLER & HIGDON, AND                  MAG. DIV. 3
JEFFREY M. STERN, RAMSEY JONES
AND CLARENCE JONES
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING

PLEASE TAKE NOTICE that the plaintiff's Motion to Remand will be heard on June 9,

2004 at 9:30 a.m.

Respectfully submitted,

_____
**TIMOTHY J. FALCON (#16909)**
**JEREMIAH A. SPRAGUE (#24885)**
**FALCON LAW FIRM**
5044 Lapalco Blvd.
Marrero, LA 70072
Telephone: (504) 341-1234
*Counsel for Plaintiff*