

'FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JUN 15  P 2: 02

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROLAND P. JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1287** |
| **THE LAW OFFICES OF ANTHONY** | **SECTION: N** |
| **G. BUZBEE, P.C., ANTHONY G. BUZBEE,** | |
| **STERN, MILLER & HIGDON, AND** | **MAG. DIV. 3** |
| **JEFFREY M. STERN, RAMSEY JONES** | |
| **AND CLARENCE JONES** | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO COMPEL ARBITRATION

MAY IT PLEASE THE COURT:

Plaintiff, Roland P. Jones, opposes the Motion to Compel Arbitration of Anthony G. Buzbee and Buzbee Law Firm, P.C. (Movants Anthony G. Buzbee and Buzbee Law Firm, P.C. are hereinafter collectively referred to as "Buzbee Law".) Buzbee Law's Motion to Compel Arbitration parallels the Motion to Stay Proceedings and Compel Arbitration brought by defendants Jeffrey M. Stern and Stern, Miller & Higdon (hereinafter collectively "Stern Law"). Plaintiff notes that he has a contemporaneously pending Motion to Remand to state district court which is set on the Court's June 23, 2004 hearing date. Plaintiff notes that the arguments put forth by Buzbee Law are largely duplicative of those made by Stern Law in its Motion to Stay Proceedings and Compel Arbitration.


____ Fee_____
____ /Process_____
_X_ Dktd__Caa__
____ CtRmDep._____
____ Doc. No.__19_

Accordingly, this opposition parallel plaintiff's opposition to Stern Law's arbitration motion. That being said, Buzbee Law's Motion to Compel Arbitration is premature because of Plaintiff's pending Motion to Remand. Further, Buzbee Law's motion will ultimately fail because of the facts and applicable law.

First, as a threshold question, this Court should decide whether or not to grant Plaintiff's Motion to Remand to state district court before addressing whether Plaintiff must submit to binding arbitration under the Federal Arbitration Act. As Plaintiff's Motion to Remand challenges this Court's subject matter jurisdiction, the Court should first decide whether or not it has subject matter jurisdiction by ruling on the motion to remand. *Audio Visual Mart, Inc. v. Telesensory Corporation*, 1996 WL 495151, *1 (E.D.La.) ("to consider the defendant's motion to stay to permit arbitration pursuant to the [Federal Arbitration Act], the Court must decide as a threshold matter whether it has subject matter jurisdiction in this action."). If the Court finds its subject matter jurisdiction lacking, as argued in Plaintiff's Motion to Remand, then the Court should simply remand the case and forego Buzbee Law's motion as the Court has no jurisdiction to decide the arbitration motion. Second, if the Court deems fit to consider Buzbee Law's Motion to Compel Arbitration or denies Plaintiff's Motion to Remand, then the Court should overrule and dismiss the Motion to Compel Arbitration because the entire contract, or the Power of Attorney and Engagement Agreement as it is titled, including the arbitration clause, is void. As shown in Plaintiff's Motion to Remand, Stern Law acquired Plaintiff as a client through the use of case runners - - known as "barratry" in Texas. Where barratry has occurred, Texas statutory law specifically voids the attorney-client contract. V.T.C.A., government code §82.065. Therefore, the entire contract, including the arbitration clause, upon which Buzbee Law relies is void and cannot be used to force Plaintiff to arbitrate. Third, if

2

Louisiana law applies, then the arbitration clause itself is void as unconscionable under Louisiana law because it unfairly consigns Plaintiff to arbitration but allows Buzbee Law and Stern Law to pursue remedies in court to enforce the agreement. *Posdas v. The Pool Depot, Inc.*, 858 So.2d 611 (La. App. 1sth Cir. 2003); see also *Gatton v. T-Mobile USA, Inc.*, 2003 WL 2153085 (C.D. Cal.).

## STATEMENT OF FACTS

In his Memorandum in Support of Motion to Remand, Plaintiff chronicled in detail the facts of the case and the conduct of defendants Ramsey and Clarence Jones (the "Jones Brothers"). The Jones Brothers were at all relevant times paid agents of at least Jeffrey M. Stern, defendant herein. Specifically, the Jones Brothers were paid case runners for Stern. It was through the work of the Jones Brothers that Stern Law came to represent Plaintiff in regard to his personal injury claim against Tidewater arising out of a March 19, 2002 accident. These matters are described in Plaintiff's affidavit and that of Roland P. Jones, Exhibits 1 and 2 respectively.[1] Plaintiff's specific allegation of case running by Jeffrey M. Stern and the Jones Brothers has not been denied.

The Jones Brothers brought Plaintiff to Houston, Texas to meet Stern regarding Plaintiff's case against Tidewater. Plaintiff signed the contingent fee contract for representation which is Exhibit 1 of Stern Law's motion. Plaintiff testifies that no one, not Jeffery Stern nor anyone else, ever explained the arbitration clause contained in the contract. See Exhibit 3, Lafelur's Affidavit. Within one week of plaintiff's engaging Stern Law, Stern Law farmed out Plaintiff's case to Buzbee Law and the case was subsequently malpracticed. Def. Exhibit B.

---

[1]     Plaintiff points out that James Billy Lafleur also has an action pending against the same defendants herein based on similar tortious conduct in the U.S. District Court for the Western District of Louisiana, case no. 04-1017, before Judge Melancon.

## **LAW AND ARGUMENT**

Buzbee Law argues that Plaintiff should be forced into arbitration in Harris County, Texas because of the arbitration clause in the Power of Attorney and Engagement Agreement Plaintiff signed with Stern Law. Def. Exhibit A, § 10 Arbitration.   Buzbee Law's entire argument for arbitration, however, rests upon a false presumption: that the arbitration clause is valid and enforceable. In truth, it is not.   Buzbee Law screens this fact with such language regarding the Federal Arbitration Act (hereinafter "FAA") as "there is a strong presumption in favor of arbitration" and "courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" which statements are certainly based upon valid jurisprudential authority. Def. Memo p. 4.   However, the FAA's preference in favor of compelling arbitration is based on one important predicate fact: there must be a valid arbitration agreement. *Penzoil Exploration v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1988).   Buzbee Law has skipped over this important fact and  points to the signed Power of Attorney and Engagement Agreement as though its mere existence compels arbitration.  The law says otherwise:

> Even though there is signed document containing arbitration clause which parties do not dispute they signed, court is not required to presume that there is valid contract and send any general attacks on agreement to arbitrator; rather, **where very existence of any agreement is disputed, it is for court to decide at outset whether agreement was reached, applying state-law principles of contract**.

*Will Drill Resources, Inc. v. Samson Resources Co.*, 532 F.3d 211, 211, 219-20 (5th Cir. 2003) (emphasis added).  Thus, before arbitration can be compelled, it must first be found that there is a valid arbitration agreement.  But in order to determine if there is a valid arbitration agreement, state law principles of contract must be applied.  But in this case, there are Louisiana citizens suing Texas

4

and Louisiana citizens for tortious conduct which occurred in Texas and Louisiana. The contract was signed in Texas but under these facts it does not seem a foregone conclusion that Texas law applies. Thus, it seems that a choice of law determination is a necessary precursor to judging whether the arbitration clause is enforceable.

Normally, "[u]nder the doctrine enunciated in *Erie* and its progeny, 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" *Esfeld v. Costa Grociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002); quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 2219, 135 L.Ed.2d 659 (1996); citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); see also Rules of Decision Act, 28 U.S.C. § 1652. Yet, regardless of *Erie*, it seems Texas law is applicable because the contract was executed in Texas and the contract itself calls for application of Texas law to any disputes (and, presumably, disputes as to the contract's validity). This choice of law dilemma highlights that the Court should first determine whether it has jurisdiction before delving into the validity of the arbitration agreement and what law should apply to that analysis. Moreover, regarding *Erie* and diversity, this Court is not yet sitting in diversity, rather it is presented with the question of whether it has diversity jurisdiction. Therefore, Plaintiff submits that the Court should rule on his Motion to Remand before addressing Buzbee Law's Motion to Compel Arbitration and remand the case because diversity jurisdiction is lacking. To address Buzbee Law's and Stern Law's motions to compel arbitration before Plaintiff's Motion to Remand will require going through a choice of law exercise and a determination of the contract's validity before the Court even decides if it has subject matter jurisdiction. That would be a waste of the Court's time and the parties' resources.

However, if the Court deems it appropriate to decide Buzbee Law's Motion to Compel

Arbitration, the Court should overrule and dismiss that motion. No matter what law applies, Texas or Louisiana, the arbitration clause is invalid and unenforceable.

## 1. The Court should rule on Plaintiff's Motion to Remand First

First, plaintiff submits that this Court should decide whether or not to grant his Motion to Remand to state district court before addressing whether plaintiff must submit to binding arbitration. Plaintiff's pending Motion to Remand challenges this Court's subject matter jurisdiction. Buzbee Law asks this Court to skip over Plaintiff's Motion to Remand and then order Plaintiff to binding arbitration in Harris County, Texas. Plaintiff submits that the proper protocol is for the Court to first determine whether it has subject matter jurisdiction before addressing arbitration. If the Court finds its subject matter jurisdiction lacking, then that should end the inquiry - - the case should be remanded. The state district court could then decide whether arbitration is appropriate as state courts have concurrent jurisdiction to decide whether to order arbitration under the FAA. *Frank v. American General Finance, Inc.*, 23 F.Supp.2d1346, 1349 (S.D. Ala. 1998).

The contractual arbitration clause in the Stern Law contract states that in the event of a dispute the parties will submit to arbitration pursuant to the FAA. Def. Ex. A, § 10 Arbitration. The FAA does not confer federal subject matter jurisdiction on its own and a federal court must have an independent basis for subject matter jurisdiction. *Drexel Burnham Lambert, Inc. v. Valenzuela Bock*, 696 F.Supp. 957, 959 (S.D.N.Y. 1988); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Haydn*, 637 F.2d 391 (5th Cir. 1981). Therefore, "[t]o consider the defendant's motion to permit arbitration pursuant to the FAA, the Court must first decide as a threshold matter whether it has subject matter jurisdiction in [the] action." *Audio Visual Mart, Inc. v. Telesensory Corporation*, 1996 WL 495151, *1 (E.D.La.). In fact, cases abound which hold that on removal a federal court must first decide

whether it has subject matter jurisdiction before dispensing with other pending motions. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (generally subject matter jurisdiction should be resolved before personal jurisdiction questions are resolved); *Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc.*, 92 F.Supp.2d 891 (N.D.Iowa 2000) (subject matter jurisdiction before personal jurisdiction).; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391 (C.A. Fla. 1981) (court must address remand motion before motion to compel arbitration); *Modern Office System, Inc. v. AIM Caribbean Exp., Inc.*, 802 F.Supp. 617 (D.Puerto Rico 1992) (because remand motion challenged removal court's subject matter jurisdiction, that motion must be decided before defendant's prescription motion).

Clearly it is reasonable and logical to assert that this Court should decide whether it has subject matter jurisdiction before any other proceedings go forward - - such as Buzbee Law's Motion to Compel Arbitration. Moreover, for the reasons stated in Plaintiff's Motion to Remand, this case should be remanded.

## 2. The Contract is Void under Texas law

Regardless of the Court's decision on Plaintiff's Motion to Remand, the Court should not order Plaintiff to arbitration. The contingent fee contract on which Buzbee Law relies memorializes an attorney-client relationship which arose out of Jeffrey M. Stern's barratrous conduct with the Jones Brothers. Under Texas law, the Power of Attorney and Engagement Agreement and the arbitration clause on which Buzbee Law relies to compel arbitration are void and of no effect. The relevant Texas statute is V.T.C.A., Government Code §82.065(b) which states:

> A contingent fee contract for legal services is voidable by the client if it is procured as a result of conduct violating the laws of this state or the Disciplinary Rules of the State Bar of Texas regarding barratry

7

by attorneys or other persons.

The Texas "legislature afforded clients the express remedy of voiding a contingent contract that violates barratry rules . . . ." *Enochs v. Brown*, 872 S.W.2d 312, 318 (Tex. App. - Austin 1994); citing §82.065(b). It is clear that the Power of Attorney and Engagement Agreement upon which Buzbee Law relies is a contingent contract. See § 2 Attorneys Fees. It is clear that barratry occurred in procurement of that contingent contract. Exhibit 2. Neither Jeffrey M. Stern nor any other defendant denies that barratry occurred. Plaintiff submits that his attorney-client relationship with Stern Law arose out of the barratrous relationship of Stern and the Jones Brothers. Accordingly, Plaintiff hereby declares the contract void in accord with the right clearly granted him by §82.065(b) As the contract is void,  the arbitration clause upon which Buzbee Law relies is void.

In order to compel arbitration, a party must establish that: (1) a valid agreement to arbitrate exists; and (2) that the dispute in question falls within the scope of that arbitration agreement. *Penzoil Exploration v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1988). In the case at bar, Buzbee Law cannot make it past the first prong of the test. The contract and the arbitration clause is void for barratry.

Plaintiff notes that this is not his motion and it may be necessary for further evidence gathering and briefing on the barratry claim if the Court so determines. Therefore, if the Court does not remand this case then Plaintiff submits that it would be proper to conduct discovery on the barratry claim so that it may be fully proven up so that Plaintiff could move to declare the contract void.

"The purpose of the barratry statute is to protect vulnerable and unknowing individuals from overreaching or improper behavior on the part of lawyers." *Enochs* at 318; citing *Lopez v. State*, 846

S.W.2d 90, 95 (Tex. App. – Corpus Christi 1992).   Clearly the barratry statute's purpose makes it applicable to this case just as much as does the statute's clear language.   Buzbee Law's Motion to Compel Arbitration should be overruled and dismissed.

### 3. If Louisiana law applies, the arbitration clause is still void

Assuming, *arguendo*, that Louisiana law applies, rather than Texas law, the arbitration clause in the contract is void as unconscionable.   The clause is one-sided in that its language only dictates that Plaintiff must arbitrate any disputes while it allows the attorney-defendants to pursue remedies in any chosen forum, i.e., they can still sue Plaintiff in court to enforce the contract.   Specifically, the arbitration clause states that only claims "made **by or on behalf of the Client** shall be resolved by binding arbitration . . . ."[2] Def. Ex. 1, § 10 Arbitration.   No such stricture applies to the attorneys. But it gets worse because the contract also makes Plaintiff solely responsible to pay for arbitration: "The expense of arbitration shall be a Cash Advance pursuing the Claims."   *id*.    The contract defines a "Cash Advance" as any expense which is charged back to the client related to the litigation including such things as copy costs, expert fees, postage, etc.   Def. Ex. 1, § 7.01 Advances;   § 10 Arbitration.   But the contract does not identify arbitration as an expense except in the arbitration section. Yet there is more, as these cash advances, including the cost of arbitration, are prospectively "deemed approved as to reasonableness" by the client. § 7.01 Advances   And Plaintiff, in addition to paying for the arbitration, must also submit to arbitration in only one place: Harris County, Texas - - Buzbee Law's and Stern Law's home turf. § 10, Arbitration. So, under the arbitration clause, only Plaintiff loses his right to pursue his claims in a real court, only Plaintiff is taxed with the cost of arbitration - - no matter what it costs because the cost is preemptively presumed reasonable - - and

---

[2]      "Client" being defined as Plaintiff.   § 1, Purpose of Representation.

9

Plaintiff must go to the attorney-defendants' chosen venue to arbitrate.   There is absolutely no mutuality in the arbitration clause.

Under Louisiana law, arbitration agreements must be completely mutual to be enforceable. *Simpson v. Grimes*, 849 So.2d 740, 749 (La. App. 3rd Cir. 2003).   Where, under the terms of the agreement, a defendant "retained the right to pursue all civil remedies . . . while the [plaintiff] was required to submit all disputes between the parties to binding arbitration" the arbitration provision is void because it lacks mutuality.   *id.*, citing *The Money Place, LLC v. Barnes*, 78 S.W. 3rd 714, 716-7 (Ark. 2002).[3]   Moreover, the Louisiana 1st Circuit has held that an arbitration provision is "unduly burdensome [where] it binds [plaintiff] to arbitration, while reserving unto [defendant] the option of pursuing other remedies to collect monies owed under the agreement" and is void. *Posadas v. The Pool Depot, Inc.*, 858 So.2d 611, 614 (La. App. 1st Cir. 2003).

Also, the font contained in the contract is of exceedingly small size.   It appears to be about a 10 point font.   The document is single spaced.   The arbitration clause is at page 4 of the contract. It is a printed form contract prepared by Stern Law.

"A contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party."   *Posadas* at 614. "Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms."   *id.*, citing *Golz v. Children's Bureau of N.O., Inc.*, 326 So.2d 865, 869 (La. 1976).   Under such circumstances, "the arbitration agreement [is] adhesionary and unenforceable."   *id.*

---

[3]        Though the *Simpson* court was applying Louisiana law, it looked to other jurisdictions, such as Arkansas, regarding lack of mutuality.

10

In the instant case, Plaintiff is the weaker party. When the contract was signed, Plaintiff had just been injured, was scared about his future and was scared about his medical condition. He was brought to Houston extremely early in the morning. Exhibit 1. Plaintiff was told that he and his interests would be protected by Stern Law. *id.* He was offered medical care for his injury and help with his financial situation. *id.* In the midst of all this, plaintiff was given a contingent contract in small print with the arbitration clause buried at the back of the document which no one ever explained to him. Exhibit 3. Under the circumstances extant, the arbitration clause is void under Louisiana law.

## CONCLUSION

Plaintiff, Roland P. Jones, submits that the Court should first decide his Motion to Remand before addressing Buzbee Law's Motion to Compel Arbitration and should remand this case because subject matter jurisdiction is lacking. If, however, the Court denies Plaintiff's Motion to Remand or sees fit to decide Buzbee Law's Motion to Compel Arbitration at this time, then Buzbee Law's motion should be overruled and dismissed because the contract is void under Texas law and the arbitration clause is void under Louisiana law.

Respectfully submitted,

TIMOTHY J. FALCON (#16909), T.A.
JEREMIAH A. SPRAGUE (#24885)
FALCON LAW FIRM
5044 Lapalco Blvd.
Marrero, LA 70072
Telephone: (504) 341-1234
*Counsel for Plaintiff, Roland P. Jones*

11

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

ROLAND P. JONES                                     CIVIL ACTION

VERSUS                                              NO. 04-1287

THE LAW OFFICES OF ANTHONY                          SECTION: N
G. BUZBEE, P.C., ANTHONY G. BUZBEE,
STERN, MILLER & HIGDON, AND                         MAG. DIV. 3
JEFFREY M. STERN, RAMSEY JONES
AND CLARENCE JONES

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that he has served this foregoing Memorandum In Opposition to Motion to Stay Proceedings and Compel Arbitration on all counsel of record and all unrepresented parties by overnight mail this 15th day of June 2004.

_____
JEREMIAH A. SPRAGUE

**STATE OF LOUISIANA**

**PARISH OF JEFFERSON**

## <u>AFFIDAVIT</u>

BEFORE ME, the undersigned notary public, came and appeared affiant:

ROLAND P. JONES, JR.

who, upon being duly sworn, did attest as follows:

1) That affiant is presently the plaintiff in the matter of *Roland P. Jones v. The Law Offices of Anthony G. Buzbee, P.C., et al.*, CV-04-1287, Section "N", Magistrate 1, United States District Court for the Eastern District of Louisiana;

2) That on or about March 19, 2002 he was involved in an accident aboard the M/V CHIEF, a Tidewater vessel, in which he suffered injuries;

3) That on repeated occasions prior to the March 19, 2002, Ramsey Jones, the defendant herein, had told affiant that if affiant were injured in an offshore accident, Ramsey Jones could connect affiant with attorneys would obtain a substantial recovery for affiant.

4) That on March 21, 2002, two days after his accident, affiant saw Ramsey Jones at a gas station in St. Martinville, Louisiana. Affiant informed Ramsey Jones that affiant had been in a maritime accident on March 19, 2002;

5) That Ramsey Jones did tell affiant that affiant needed legal representation for the matter and that he knew of a good lawyer named Jeffrey M. Stern, a defendant in the above referenced action, who could represent affiant and that if affiant were represented by Stern then Ramsey Jones told affiant:

- That affiant would be well taken care of, which affiant understood to mean that Stern would obtain a substantial recovery or settlement;

- That affiant would not have to ever work again, which affiant understood to mean that Stern would obtain a substantial recovery or settlement;

- That Stern would see to it that affiant was paid his settlement with one year;

Page 1 of 4



●                              ●

- That affiant's bills and expenses would be paid by Stern; and

- That Stern would pay money to Ramsey Jones for bringing in affiant's claim for Stern.

6) Affiant then agreed to go with Ramsey Jones to Houston, Texas the next day to meet with Stern;

7) Affiant then informed Ramsey Jones that his friend and co-worker, James Billy Lafleur, had also been injured in the same March 19, 2002 accident whereupon Ramsey Jones told affiant to contact Lafleur to see if he also would meet with Stern;

8) Whereupon affiant accompanied Ramsey Jones to Ramsey Jones' house whereupon they telephoned Lafleur. Affiant told Lafleur that Ramsey Jones knew of a good attorney in Houston, Texas who could represent Lafleur in regards to the March 19, 2002 accident and that Ramsey Jones wanted to talk to Lafleur;

9) Whereupon Ramsey Jones took the phone and questioned Lafleur about the accident, Ramsey Jones then told Lafleur that the attorney in Houston, Stern, would take care of everything. Ramsey Jones then concluded the call and informed affiant that Lafleur would also be going to Houston the following day to meet with Stern;

10) The following morning, March 22, 2002, at 4:30 a.m., Ramsey Jones and Clarence "Scoby" Jones, also a defendant herein, arrived at affiant's home with an automobile to drive affiant from St. Martinville to Houston;

11) At Lafayette, Louisiana, Ramsey and Clarence Jones picked up Lafleur and the foursome traveled to Houston;

12) During the drive to Houston, Ramsey Jones and Clarence Jones told affiant and Lafleur at length of Stern's great skill as an attorney, of his great influence, and of how Stern would take care of all of affiant and Lafleur's expenses and financial needs and would get them a substantial amount of money for their claims;

13) Upon arrival at Stern's office that morning, Ramsey Jones and Clarence Jones went into Stern's private office with instructions to affiant and Lafleur to wait in the lobby. After approximately 15 minutes, affiant and Lafleur were brought into Stern's office whereupon they met with Stern regarding their respective cases, discussed their accidents and their injuries all in the presence of Ramsey Jones and Clarence Jones. Stern further told affiant and Lafleur regarding their cases that "I smell money". Shortly thereafter affiant and Lafleur signed a contract of representation with Stern.

14) After the contract was signed, Clarence Jones told affiant and Lafleur that if they

Page 2 of 4

wanted money, Stern would give it to them immediately.  Whereupon Stern asked affiant and Lafleur how much money they wanted and how much was needed for expenses.  Stern gave affiant a check for $1,500 and Lafleur a check for $1,000.  All this occurred in the presence or Ramsey Jones and Clarence Jones.

15) Under Stern's direction, Ramsey Jones and Clarence Jones, then brought affiant and Lafleur to see Dr. Lubar Jarolimek in Houston that same day.  After their appointments with Dr. Jarolimek, Ramsey Jones and Clarence Jones then transported affiant and Lafleur back to Louisiana.

16) At a rest stop on the drive back from Houston, Ramsey Jones approached affiant and told him that Stern had given Ramsey Jones $2,000 for bringing in affiant's and Lafleur's cases.

17) Affiant and Lafleur returned to Houston on numerous occasions to see their doctors in Houston.  Affiant was informed that Clarence Jones was paid $200 by Stern for each time Clarence Jones drove affiant to Houston, and that Clarence Jones was as also paid $200 for each time he drive Lafleur to Houston, though Clarence Jones drove affiant and Lafleur to Houston at the same time.

18) That on one occasion, affiant saw Clarence Jones hand out loan checks from Stern to a number of Stern's clients in the lobby of Dr. Jarolimek's office, in addition to a loan check to affiant from Stern.

19) That throughout affiant's representation by Stern, Stern, Miller & Higdon, Anthony G. Buzbee and the Buzbee Law Firm, P.C., Clarence Jones repeatedly assured affiant that Stern would take good care of affiant's case, which made affiant believe he was being well represented.

20) That affiant was told by Rosemary Snyder, a secretary, paralegal or office manager at S tern, M iller & H igdon, t hat a ffiant w as su pposed t o b e b rought t o m edical appointments in Houston by Clarence Jones.

21) That defendant, Anthony G. Buzbee, advised affiant that affiant should get an itemized list of all expenses of Stern, Miller & Higdon associated with the case from Stern, Miller & Higdon because other clients referred to Buzbee by Jeffrey M. Stern had complained about excessive expenses charged on their cases by Stern, Miller & Higdon.

*Roland P Jones Jr*

ROLAND P. JONES, JR.

Page 3 of 4

SWORN AND SUBSCRIBED before me,
the undersigned notary, this 25th day of
May 2004.

_____
Notary Public
JEREMIAH A. SPRAGUE
La. Bar No. 24885

STATE OF LOUISIANA

PARISH OF JEFFERSON

## AFFIDAVIT

BEFORE ME, the undersigned notary public, came and appeared affiant:

JAMES BILLY LAFLEUR

who, upon being duly sworn, did attest as follows:

1)    That affiant is presently the plaintiff in the matter of *James Billy Lafleur v. The Law Offices of Anthony G. Buzbee, P.C.*, *et al.*, CV-04-1017, Section "L", Magistrate "O", United States District Court for the Western District of Louisiana;

2)    That on or about March 19, 2002 he was involved in an accident aboard the M/V CHIEF, a Tidewater vessel, in which he suffered injuries;

3)    That on or about March 21, 2002, two days after his accident, affiant received a telephone call from his friend and co-employee, Roland Jones, who was also involved in the accident of March 19, 2002. Roland Jones informed affiant that an individual named Ramsey Jones, a defendant in the above referenced action, knew of a good attorney in Houston, Texas who could represent Lafleur in regards to the March 19, 2002 accident and that Ramsey Jones wanted to talk to affiant.

4)    Whereupon, Ramsey Jones took the phone and questioned affiant about the accident, Ramsey Jones then told affiant that the attorney in Houston, Stern, would take care of everything. Affiant then agreed to accompany Roland Jones and Ramsey Jones to Houston the following day to meet with Stern;

5)    The following morning, March 22, 2002, at 5:00 a.m., Ramsey Jones and Clarence "Scoby" Jones, also a defendant herein, along with Roland Jones, met affiant in Lafayette with a motor vehicle and drove affiant to Houston;

6)    During the drive to Houston. Ramsey Jones and Clarence Jones told affiant and Roland Jones at length of Stern's great skill as an attorney, of his great influence, and of how Stern would take care of all of affiant and Lafleur's expenses and financial needs and would get them a substantial amount of money for their claims;

7)    Upon arrival at Stern's office that morning, Ramsey Jones and Clarence Jones went into Stern's private office with instructions to affiant and Roland Jones to wait in the lobby. After approximately 15 minutes, affiant and Roland Jones were brought into

Page 1 of 3



Stern's office whereupon they met with Stern regarding their respective cases, discussed their accidents and their injuries all in the presence of Ramsey Jones and Clarence Jones. Stern further told affiant and Roland Jones regarding their cases that "I smell money". Shortly thereafter affiant and Roland Jones signed a contract of representation with Stern.

8) After the contract was signed, Clarence Jones told affiant and Roland Jones that if they wanted money, Stern would give it to them immediately. Whereupon Stern asked affiant and Roland Jones how much money they wanted and how much was needed for expenses. Stern gave affiant a check for $1,000 and Roland Jones a check for $1,500. All this occurred in the presence or Ramsey Jones and Clarence Jones.

9) Under Stern's direction, Ramsey Jones and Clarence Jones, then brought affiant and Roland Jones to see Dr. Lubar Jarolimek in Houston that same day. After their appointments with Dr. Jarolimek, Ramsey Jones and Clarence Jones then transported affiant and Roland Jones back to Louisiana.

10) Affiant and Roland Jones returned to Houston on numerous occasions to see their doctors in Houston. Affiant was informed that Clarence Jones was paid $200 by Stern for each time Clarence Jones drove affiant to Houston, and that Clarence Jones was as also paid $200 for each time he drive Roland Jones to Houston, though Clarence Jones drove affiant and Roland Jones to Houston at the same time.

11) That on one occasion, affiant saw Clarence Jones hand out loan checks from Stern to a number of Stern's clients in the lobby of Dr. Jarolimek's office, in addition to a loan check to affiant from Stern.

12) That throughout affiant's representation by Stern, Stern, Miller & Higdon, Anthony G. Buzbee and the Buzbee Law Firm, P.C., Clarence Jones repeatedly assured affiant that Stern would take good care of affiant's case, which made affiant believe he was being well represented.

13) That affiant was told by Rosemary Snyder, a secretary, paralegal or office manager at Stern, Miller & Higdon, that affiant was supposed to be brought to medical appointments in Houston by Clarence Jones.

14) That defendant, Anthony G. Buzbee, advised affiant that affiant should get an itemized list of all expenses of Stern, Miller & Higdon associated with the case from Stern, Miller & Higdon because other clients referred to Buzbee by Jeffrey M. Stern had complained about excessive expenses charged on their cases by Stern, Miller & Higdon.

_JAMES BILLY LAFLEUR_
JAMES BILLY LAFLEUR

**SWORN AND SUBSCRIBED before me,**
**the undersigned notary, this 25th day of**
**May 2004.**

_____

**Notary Public**
**Jeremiah A. Sprague**
**La. Bar No. 24885**

Page 3 of 3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ROLAND P. JONES**

**VERSUS**

**THE LAW OFFICES OF ANTHONY
G. BUZBEE, P.C., ANTHONY G. BUZBEE,
STERN, MILLER & HIGDON, AND
JEFFREY M. STERN, RAMSEY JONES
AND CLARENCE JONES**

**CIVIL ACTION**

**NO. 04-1287**

**SECTION: N**

**MAG. DIV. 3**

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

STATE OF LOUISIANA

PARISH OF JEFFERSON

### <u>AFFIDAVIT</u>

BEFORE ME, the undersigned Notary Public, came and appeared:

ROLAND P. JONES

who after being duly sworn did state as follows:

1)   That he has reviewed the Affidavit of Rosemary Schneider which is Exhibit 2 of
the Motion to Stay Proceedings and Compel Arbitration filed by defendants,
Jeffrey M. Stern and Stern, Miller & Higdon; and

2)   That said affidavit is wrong.  No one, not Jeffrey M. Stern, not Rosemary
Schneider nor anyone else explained the terms relating to the Arbitration
provision at Clause 10 of the Power of Attorney and Engagement Agreement
which is Exhibit 1 of the Motion to Stay Proceedings and Compel Arbitration
filed by defendants, Jeffrey M. Stern and Stern, Miller & Higdon.



EXHIBIT
3

ROLAND P. JONES

SWORN AND SUBSCRIBED before me,
the undersigned notary, this 2nd day of June 2004.

NOTARY PUBLIC
Jeremiah A. Sprague
La. Bar Roll No. 24885